UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC ANTHONY BANFORD,<br><br>    Petitioner,<br><br>    v.<br><br>ERIC ARNOLD,<br><br>    Respondent. | Case No. 16-cv-01052-WHO (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner Eric Anthony Banford seeks federal habeas relief from his state convictions on grounds that (1) the trial court erred in refusing to use his preferred jury instructions; (2) the trial court failed to adequately respond to the jury's question; (3) the trial court erred in admitting evidence of an uncharged attempted burglary; and (4) there was cumulative error. Each of these claims lack merit. The petition for habeas relief is DENIED.

## BACKGROUND

In 2011, while intoxicated with cocaine, Banford killed a motorcyclist after driving his car into oncoming traffic in an attempt to avoid the police. In 2013, a San Mateo County Superior Court jury found Banford guilty of second degree murder, vehicular manslaughter, evasion of a peace officer resulting in death, and a hit and run from an

accident resulting in death. The jury also found true many sentencing enhancements. On the basis of these convictions and enhancements, Banford was sentenced to 59 years to life in state prison. (Ans., Ex. F at 1-2 (State Appellate Opinion, *People v. Banford*, No. A140446, 2015 WL 4749231 (Cal. Ct. App. Aug. 11, 2015) (unpublished).)

Banford's attempts to overturn his convictions in state court were unsuccessful. This federal habeas petition followed.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be

unreasonable." *Id.* at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

### I.  Jury Instructions

Banford claims the trial court violated his right to due process when it refused to give the jury his preferred instructions regarding malice.  The state appellate court summarized the facts as follows:

> The trial court instructed the jury regarding malice aforethought using the language of CALCRIM No. 520 [('First or Second Degree Murder With Malice Aforethought')], as follows:
>
> 'The defendant is charged in Count 1 with murder in violation of Penal Code section 187.
>
> To prove that the defendant is guilty of this crime, the People must prove that:  1. The defendant committed an act that caused the death of another person; AND 2. When the defendant acted, he had a state of mind called malice aforethought.
>
> There are two kinds of malice aforethought, express malice and implied malice.  Proof of either is sufficient to establish the state of mind required for murder.
>
> The defendant acted with express malice if he unlawfully intended to kill.  Express malice does not apply in this case.
>
> The defendant acted with implied malice if:  1. He intentionally committed an act; 2. The natural and probable consequences of the act were dangerous to human life; 3. At the time he acted, he knew his act was dangerous to human life; AND 4. He deliberately acted with conscious disregard for human life.
>
> Malice aforethought does not require hatred or ill will toward the victim.  It is a mental state that must be formed before the act that causes death is committed.  It does not require deliberation or the passage of any particular period of time.

3

> An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence. The death of another person must be foreseeable in order to be the natural and probable consequence of the Defendant's act.
>
> If you find the defendant guilty of murder, it is murder of the second degree.'

(Ans., Ex. F at 5-6.) Banford proposed that additional instructions on malice be given. The trial court denied the request. (*Id.* at 5.)

The state appellate court rejected Banford's claim that the trial court's decision violated his right to due process. (*Id.* at 5-6.) It found that Banford's additional instructions were duplicative or would have caused jury confusion, or both. (*Id.*)

A state trial court's failure to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceeding. *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. *Id.* Furthermore, the omission of an instruction is less likely to be prejudicial than a misstatement of the law. *Walker v. Endell*, 850 F.2d 470, 475 (9th Cir. 1987) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). Thus, a petitioner whose claim involves a failure to give a particular instruction, as opposed to an instruction that misstated the law, bears an "especially heavy burden." *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson*, 431 U.S. at 155). The significance of the omission of such an instruction may be evaluated by comparison with the instructions that were given. *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001) (quoting *Henderson*, 431 U.S. at 156).

Habeas relief is not warranted on any of Banford's instructional error claims. In each instance, the state appellate court reasonably determined that his instructions were duplicative, erroneous, or could cause juror confusion. Support for this is abundant when one compares Banford's suggested instructions with those given to the jury.

4

CALCRIM No. 520 requires a finding that the "natural and probable consequences of the [defendant's] act were dangerous to human life." Banford proposed adding "or, phrased in a different way, there was a probability that the act would result in death and [it was done] with a base antisocial motive and a wanton disregard for human life." (Ans., Ex. F at 6.)

The proposed additional language was duplicative and could lead to jury confusion, according to the state appellate court. The state supreme court had determined that "natural and probable" articulated the same standard as "wanton disregard," a holding the appellate court was bound to follow. (*Id.*) The additional instruction also could have led to juror confusion because "wanton disregard" is an "obscure phraseology" with which "many laypersons will be unfamiliar." (*Id.* at 6-7.) In light of this, not only was the state court's rejection of this claim reasonable, but I am bound by the state appellate court's determination that the given instruction accurately stated the law of California. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus). Habeas relief is not warranted on this claim.

Banford asked to add the following to CALCRIM No. 520's "conscious disregard for life" language:

> The distinction between 'conscious disregard for life' and 'conscious indifference to the consequences' is subtle but nevertheless logical. Phrased in everyday language, the state of mind of a person who acts with conscious disregard for life is, 'I know my conduct is dangerous to others, but I don't care if someone is hurt or killed.' The state of mind of the person who acts with conscious indifference[] to the consequences is simply, 'I don't care what happens.' It makes sense to hold the former more culpable than the latter, since only the former is actually aware of the risk created.

(Ans., Ex. F at 7.)

The state court found that the instruction given to the jury "adequately covered" the concepts contained in Banford's language. Furthermore, Banford failed "to explain how

CALCRIM No. 520, which specifically references disregard for *life*, permitted the jury to convict him based on mere indifference to the consequences." (*Id.*)

As noted by the state court, Banford has not shown how his conviction on a higher standard (disregard for life) than his proposed one (conscious disregard for consequences) violated his due process rights or otherwise adversely affected him. Furthermore, the state court's determination being reasonable, AEDPA bars habeas relief. Also, this Court is bound by the state court's determination that the instruction given accurately stated the law of California. Habeas relief is not warranted here.

Banford also asked to add language about implied malice: "In addition, implied malice requires a base antisocial motive and is shown when the defendant does an act intentionally and deliberately that involves a high degree of probability that it will result in death."[1] (*Id.* at 7.) According to the state appellate court, "base antisocial motive" and "high degree probability" were "substantially similar" to CALCRIM No. 520's "natural and probable consequence" doctrine, which requires a finding that the probable "consequences of the act" were "dangerous to human life." (*Id.* at 7-8.) Also, Banford's "intentionally and deliberately" was already present in No. 520, "which requires findings the defendant acted 'intentionally' and 'deliberately.'" (*Id.* at 8.)

The state appellate court reasonably determined that 520's language was substantially similar to that of the proposed instructions. No. 520 contains Banford's concepts of "intentionally and deliberately," and the "natural and probable consequence"

---

[1] Banford also contends that the following lines from No. 520 render the instruction "internally inconsistent": (1) "He [defendant] deliberately acted with conscious disregard for human life"; (2) "It [malice] does not require deliberation or the passage of any particular period of time." Banford believes a jury would be confused with an instruction that tell it to determine whether a defendant acted "deliberately," while then telling the jury that forming malice does not require "deliberation." (Pet. at 8-9.) The state appellate court rejected this claim. "We disagree that juxtaposition created a probability the jury believed it could convict defendant without finding he acted deliberately; one can act deliberately without engaging in deliberation . . . We presume the jury would know the difference between a deliberate act and deliberation." (Ans., Ex. F at 8-9 n.4.) Habeas relief is not warranted here. "[D]eliberately" and "deliberation" appear in separate sentences with sufficiently different meanings (one is an adjective while the second is a noun, for example) that no misunderstanding is likely.

doctrine encompasses his "high degree of probability" suggestion. Habeas relief is not warranted here.

Finally, Banford asked to add the following language on the meaning of malice: "Malice involves an element of viciousness — an extreme indifference to human life. It is when a defendant, free from any mental impairment and not acting in the heat of passion or an adequate provocation, makes a voluntary choice to commit a person-endangering act." (*Id.* at 8.) Such language was both duplicative and potentially confusing, according to the state appellate court. It was duplicative because "viciousness" and "extreme indifference to human life" are echoed by 520's requirement that Banford intentionally committed an act that was naturally and probably dangerous with conscious disregard for human life. It was potentially confusing because jurors might make the mistake that Banford's cocaine use "precluded a finding of implied malice." (*Id.*)

The state appellate court reasonably determined that No. 520's language contained the concepts Banford advocated adding. Simply put, "conscious disregard for human life" seems far stronger than "extreme indifference" because "conscious" sounds as if the disregard is almost an intentional act. "Extreme indifference," in contrast, sounds more like negligence. Also, this Court is bound by the state court's determination that No. 520 accurately stated the law of California, in particular the state's laws on the role of intoxication in this case. Habeas relief is not warranted here.

After comparing Banford's proposed instructions with those given to the jury, I conclude that the state appellate court's rejection of his instructional claims was reasonable. It is entitled to AEDPA deference. Banford's instructional claims are DENIED.

## II. Jury Question

Banford claims that the trial court violated his right to due process when it failed to respond adequately to a jury question. The jury foreperson sent the following question to the trial court during deliberations: "Is their [*sic*] a legal definition for 'deliberately acted with conscious disregard'? If so, can we have it? . . . or any of the pieces: 'deliberately',

7

1  conscious disregard'." The court, after discussing the matter with counsel, answered, "No.
2  Please review jury instructions 200, 252 and 520." There were no further questions from
3  the jury. (Ans., Ex. F at 9.)

4      The state appellate court rejected the objection that the trial court's response
5  violated Banford's due process rights. (*Id.* at 10-11.) Any additional instructions would
6  have provided only "marginally more information to the jury" because the in-court
7  instructions gave sufficient explanation. (*Id.* at 10.) No. 200 told the jurors to apply words
8  and phrases with their "ordinary, everyday meanings." No. 252 "informed the jury that the
9  charge of second degree murder requires proof of the mental state (implied malice) defined
10 by No. 520. (*Id.* at 11.)

11     "When a jury makes explicit its difficulties, a trial judge should clear them away
12 with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946). The
13 trial judge has a duty to respond to the jury's request for clarification with sufficient
14 specificity to eliminate the jury's confusion. *See Beardslee v. Woodford*, 358 F.3d 560,
15 574-75 (9th Cir. 2004). When a trial judge responds to a jury question by directing its
16 attention to the precise paragraph of the constitutionally adequate instruction that answers
17 its inquiry, and the jury asks no follow up question, a reviewing court may "presume[] that
18 the jury fully understood the judge's answer and appropriately applied the jury
19 instruction." *Waddington v. Sarausad*, 555 U.S. 179, 196 (2009). Just as a jury is
20 presumed to follow its instructions, it is presumed to understand a judge's answer to a
21 question. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

22     The state appellate court reasonably determined that no constitutional violation
23 occurred. First, the trial court directed the jury to the instructions that answered its
24 question. These specific instructions told the jurors to use words in their everyday
25 meanings unless the instruction specified otherwise. Second, the jury asked no further
26 questions. Therefore, I must presume that the jury fully understood the answer and
27 appropriately applied the instruction. *Sarausad*, 555 U.S. at 196; *Weeks*, 528 U.S. at 234.
28 Banford has not overcome this presumption. Because the state appellate court's

United States District Court
Northern District of California

1  determination was reasonable, it is entitled to AEDPA deference. Accordingly, this claim
2  is DENIED.

3  **III.   Admission of Evidence**

4   Just before encountering Banford, the police were investigating a possible burglary
5  at a house in East Palo Alto. During their search of the neighborhood, the police came
6  across Banford standing near two women on a street corner that was about 300 yards from
7  the house. An officer recognized Banford and knew he was on parole or probation.
8  Another officer shone a light on Banford, who "exhibited signs of usage of cocaine base,
9  including sweatiness and licking his lips." Banford crossed the street, stepped into his car
10 and then drove off without his headlights on. The police followed. (Ans., Ex. F at 11.)

11  Evidence of this incident was admitted at trial. Banford claims that such evidence
12 was prejudicial character evidence because it associated him with a burglary he was not
13 involved in. (Pet. at 17.) The state appellate court rejected this claim. It concluded that
14 the evidence was properly admitted to explain the actions of officers, not as character or
15 propensity evidence. Furthermore, its admission was not prejudicial or inflammatory.
16 "The incident paled in comparison to the conduct for which [Banford] was charged."
17 (Ans., Ex. F at 13.)

18  Habeas relief is not warranted here because no remediable federal constitutional
19 violation occurred. First, a petitioner's due process rights concerning the admission of
20 propensity or character evidence is not clearly established for purposes of review under
21 AEDPA, the Supreme Court having reserved this issue as an "open question." *Alberni v.*
22 *McDaniel*, 458 F.3d 860, 866–67 (9th Cir. 2006). Second, even if the evidence were
23 prejudicial, the Supreme Court "has not yet made a clear ruling that admission of irrelevant
24 or overtly prejudicial evidence constitutes a due process violation sufficient to warrant
25 issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). Third,
26 any claim that the state court erred in admitting the evidence under state law is not
27 remediable on federal habeas review. The state appellate court's ruling that the evidence
28 was properly admitted under state law binds this federal habeas court. *Richey*, 546 U.S. at

76.

This claim is DENIED.

### IV. Cumulative Error

Banford claims that the cumulative effect of all the errors at trial violated his right to due process. (Pet. at 21.) This claim was raised on direct appeal but the state appellate court did not address this claim in its written opinion.

When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state-court decision is objectively unreasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This review is not de novo. "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003). Where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).

Because there was not a single constitutional error here, there can be no cumulative error. In my independent review of this claim, I cannot say that the state court decision was objectively unreasonable. This claim is DENIED.

### CONCLUSION

The state court's adjudication of Banford's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

1   A certificate of appealability will not issue.  Reasonable jurists would not "find the
2   district court's assessment of the constitutional claims debatable or wrong."  *Slack v.
3   McDaniel*, 529 U.S. 473, 484 (2000).  Banford may seek a certificate of appealability from
4   the Ninth Circuit.

5   The Clerk shall enter judgment in favor of respondent and close the file.

6   **IT IS SO ORDERED.**

7   **Dated:**  March 28, 2017



WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California

11